Opinion issued January 26, 2012



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-10-00010-CV

———————————

KATHRYN MYLES JACKSON AND
CLIFTON JACKSON, Appellants

V.

NORTH FOREST INDEPENDENT SCHOOL
DISTRICT, Appellee

 

 



On Appeal from the 113th District Court

Harris
County, Texas

Trial
Court Cause No. 2009-69445

 

 



MEMORANDUM OPINION

          Appellants,
Kathryn Myles Jackson and Clifton Jackson, appearing pro se, challenge the
trial court’s order dismissing their lawsuit against appellee, North Forest
Independent School District (“North Forest ISD”), multiple other governmental
entities, and Mandola Jos. F.[1]  In their sole issue, the Jacksons contend
that the trial court erred in sustaining the Harris County District Clerk’s
contest to their affidavit of indigence[2] and ultimately dismissing
their lawsuit for failing to pay the filing fee and other costs.       

          We
reverse and remand.

Background

          On
October 27, 2009, the Jacksons filed their Original Petition for Title of Real
Property Acquired by Adverse Possession and Temporary Restraining Order, alleging
that they had acquired property located at “0 Laura Koppe
Rd. Houston, Texas 77028”[3] by adverse possession after
maintaining the property for twenty-five years. 
The Jacksons further allege that, as a result of a judgment obtained by North
Forest ISD in a separate lawsuit, the property was scheduled to be sold “for
delinquent taxes” on November 3, 2009.[4]  The Jacksons seek an order temporarily
restraining the sale of the property.    

The Jacksons attached to their petition
a notarized Application to Proceed without Payment of Fees, which they both signed.[5]  In their application, the Jacksons jointly declare
that they are unable to pay the costs of the proceedings and are “entitled to
the relief sought in the petition.”[6]  They state that they are not incarcerated, are
not currently employed, and their last day of employment had been on July 15,
2008.  They aver that, in the previous twelve
months, they have not received money from “business, profession, or other self
employ,” “rent payments, interest or dividends,” “annuities or life insurance
payments,” “disability or workers compensation payments,” or
“inheritances.”  Finally, the Jacksons
state,

I declare that I have less
than $20.00 in my checking account; I own a frame house, and a 2002 Honda CRV
that is currently in bankruptcy.  There
is no one that depends on me for support[.]  My husband and I both are currently employed
and receives 12 dollars an hour 20 hours per week as
of Sept. 2009.  Our current expenses exceeds [sic] our combined income.  Bankruptcy payment is $865 per month,
furniture payment $232.72, car insurance $85.00, house insurance $140.00, food
$200.00, phone bill $45.00, $102.00.

 

On November 13, 2009, the district
clerk filed a Contest of Affidavit of Indigence.  Contending that the Jacksons had failed to
comply with one or more unspecified “statutory requirements,” the district clerk “demand[ed] strict proof”
that the Jacksons were “too poor to pay filing fees.”  On December 7, 2009, the trial court conducted
a hearing on the district clerk’s contest. 
The reporter’s record from this hearing reveals that, immediately after a
trial court clerk had notified the trial court that the Jacksons had called the
court to state that they could not attend the hearing, the trial court
instructed the Harris County Attorney to “fill in the blanks” of the proposed
order sustaining the contest.  It then stated
that it would sign the order.  Neither
the district clerk nor the trial court ever discussed on the record the substance
of the Jacksons’ affidavit.  

Also on December 7, 2009, the trial
court signed the Judgment and Order Sustaining Contest to Pauper’s Oath.  In its order, the trial court found that the
Jacksons were able to pay the filing fees, the Jacksons’ affidavit was not
filed in good faith, and the contest should be sustained.  The trial court made no other findings in
support of its order, nor did it set forth any reasons to support its finding that
the Jacksons had filed their affidavit in bad faith.  The trial court enjoined any further proceedings
in the case until the Jacksons paid $509 in filing fees, and other incurred
costs.  It also ordered that the case
would be dismissed without prejudice and noted that it would enter a judgment
against the Jacksons in the amount of $509 if they did not pay such fees by
February 8, 2010.

On December 18, 2009, the Jacksons
filed a document entitled “Appeal from Adverse Decision,” in which they asked
the trial court to vacate its order granting the district clerk’s contest.  It appears that, based upon the substance of this
document, the Jacksons may have intended this document to constitute a request for
the trial court to reconsider its ruling. 
The Jacksons asserted that, as early as December 4, 2009, they had
notified the district clerk, through the Harris County Attorney, that they had
not received proper notice of the December 7, 2009 hearing and that they could
not attend the hearing in light of a conflicting medical appointment at a
hospital.  The Jacksons also attached a
bank statement reflecting a current available balance of $17.07.   In January 2010, the district clerk
forwarded this document to this Court, and we treated it as a notice of appeal
from the trial court’s order sustaining the district clerk’s contest.  

We then notified the Jacksons that
their appeal of the trial court’s order sustaining the district clerk’s contest
had been filed in this Court.  After sending
them this notice, the Jacksons began to direct additional motions to this Court,
but they also continued to make filings in the trial court.  For example, on January 26, 2010, the
Jacksons filed in this Court an “Emergency Motion to Enforce Hearing on TRO’s
in Adverse Possession Proceeding,” complaining that they had not received
timely notice of the contest hearing and they had notified the Harris County
Attorney that they could not attend the hearing because they needed to attend a
hospital appointment.  On April 2, 2010,
the Jacksons filed in this Court a Motion to Proceed Without
Payment of Fees, in which they outlined all of their outstanding bills and
averred that their expenses exceeded their combined income.  The Jacksons also attached copies of their
payroll sheets and bills to this motion. 
This Court subsequently found, in a separate order, that the Jacksons were
indigent for purposes of appeal, and we directed the filing of a record from
the trial court.

On March 4, 2011, the Jacksons
filed with the district clerk a document entitled Notice of Motion Opposing
Counsel’s Motion for Submission, in which the Jacksons again complained they had
not received notice of the contest hearing and that the hearing had proceeded
“in spite of [their] circumstances and [their] explanation” for not attending
the hearing.  The Jacksons noted that,
because the trial court had only previously “dismissed the pauper’s without
prejudice,” they were again requesting that the trial court permit them to “proceed
without payment of fees,” and they asserted that they were “receiving food
stamps” and other social service assistance. The Jacksons attached to their
“notice” a new Application to Proceed as Paupers, in which they averred that they
were unable to pay the court costs and not receiving money from business, rent,
insurance, annuities, or other sources. 
They also outlined their monthly expenses.  

On March 8, 2011, the trial court
signed its Dismissal Order,[7] noting that it had
sustained the district clerk’s Contest to the Pauper’s Oath on December 7, 2009
and, in its prior order, found that the Jacksons were able to pay all
costs.  It further noted that it had
ordered the Jacksons to pay the filing fee of $509 by February 8, 2010 and
their failure to pay the fee would result in a dismissal of their lawsuit.  The trial court stated that, in accord with
its December 7, 2009 order, the Jacksons’ lawsuit was dismissed without
prejudice because they had not paid the filing fee and other costs by February
8, 2010.  The trial court also entered a
judgment against the Jacksons and in favor of the district clerk for $509.  The Jacksons then filed another document
entitled Appeal from Adverse Decision.[8]

Standard of Review

We review for an abuse of
discretion the trial court’s dismissal order.  Black v. Jackson, 82 S.W.3d 44, 49–50 (Tex. App.—Tyler 2002, no pet.)
(providing that standard of review of dismissal under
section 13.001 of Texas Civil Practice and Remedies Code is abuse of
discretion)[9]; Johnson v. Peterson, 799 S.W.2d 345,
347 (Tex. App.—Houston [14th Dist.] 1990, no writ) (same); see also Arevalo v. Millan,
983 S.W.2d 803, 804 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (reviewing for
abuse of discretion appeal of trial court’s order sustaining contest to
affidavit of indigency that was filed for purposes of
obtaining free appellate record); Jones
v. Duggan, 943 S.W.2d 90, 93 (Tex. App.—Houston [1st Dist.] 1997, orig.
proceeding) (reviewing, by mandamus, trial court’s order sustaining contest to
affidavit to inability to pay appellate costs for abuse of discretion)[10]; Douglas v. Ingersoll, No. 14–09–00930–CV, 2010 WL 1077420, at *1
(Tex. App.—Houston [14th Dist.] Mar. 25, 2010, no pet.)
(mem. op.) (stating that
when “contest is sustained and a review of the ruling is sought, the question
is whether an examination of the record as a whole establishes that the trial
court abused its discretion”; reversing trial court’s order sustaining
district clerk’s contest to affidavit of indigence filed for purposes of appeal);
Auto v. Travelers Ins. Co., No.
01-05-00327-CV, 2006 WL 2893324, at *2 (Tex. App.—Houston [1st Dist.] 2006,
pet. denied) (mem. op.) (stating
that if “trial court sustains the contest, we must determine whether the court
abused its discretion.”).  A trial court
abuses its discretion when it acts in an arbitrary or unreasonable manner
without reference to guiding rules or principles.  Arevalo, 983 S.W.2d at 804.  To show a clear abuse of discretion, an
appellant must show that, under the circumstances of the case, the facts and
law permitted the trial court to make but one decision.[11]  Id.; Cronen v. Smith, 812 S.W.2d 69, 71 (Tex.
App.—Houston [1st Dist.] 1991, orig. proceeding).

Indigency

          In
their sole issue, the Jacksons argue that the trial court erred in dismissing
their lawsuit because they did not receive notice of the hearing on the
district clerk’s contest to their affidavit of indigency
and they could not attend the hearing.  We
also construe the Jacksons’ brief to present a general challenge to the trial
court’s order dismissing their lawsuit based upon the implied finding that
their allegation of poverty was false.

A party who is unable to afford
costs associated with an original action must file an affidavit in lieu of
paying or giving security for such costs.  Tex. R. Civ. P. 145(a).  A party “unable to afford costs” is defined
as a person who is presently receiving a governmental entitlement based on indigency or any other person who has no ability to pay
costs.  Id.  Upon a party’s filing of
such an affidavit, the clerk must docket the action, issue citation, and
provide such other customary services as are provided any party.  Id.  

The Texas Rules of Civil Procedure
prescribe the contents of an affidavit of indigency
that must be filed by a party unable to afford costs.  Id.  The affidavit

[M]ust
contain complete information as to the party’s identity, nature and amount of
governmental entitlement income, nature and amount of employment income, other
income, (interest, dividends, etc.), spouse’s income if available to the party,
property owned (other than homestead), cash or checking account, dependents,
debts, and monthly expenses. The affidavit shall contain the following
statements: “I am unable to pay the court costs. I verify that the statements
made in this affidavit are true and correct.”  The affidavit shall be sworn before a notary
public or other officer authorized to administer oaths. . . . 

 

Tex. R.
Civ. P. 145(b).

Once a contest is filed, if the
court finds at the first regular hearing in the course of the action that the
party, other than a party receiving a governmental entitlement based on indigency, is able to afford costs, the party must pay the
costs of the action.[12]  Tex. R. Civ. P. 145(d).  A trial court that finds that a party is able
to afford costs must set forth its “[r]easons for such a finding” in an order.  Id.
(emphasis added).  Except with leave of
court, no further steps in the action will be taken by a party who is found
able to afford costs until payment is made. 
Id.

When an affidavit of indigence is filed
pursuant to rule 145, a trial court may dismiss the case on a finding that the
allegation of poverty in the affidavit is false.[13]  Tex.
Civ. Prac. & Rem. Code Ann. § 13.001(a)(1) (Vernon 2002); In
re Kastner, No. 14-09-00653-CV, 2009 WL 3401867,
at *1 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding [mand. denied]) (mem. op.) (“When
the trial court has sustained a contest to an affidavit of indigence filed
pursuant to Texas Rule of Civil Procedure 145, the court typically dismisses
the case, finding the allegation of poverty is false and/or the case is
frivolous.”).  The purpose of section
13.001 is to ensure that limited resources are employed as efficiently as
possible to resolve arguable claims and claims without merit are dismissed at
an early stage in the proceedings.  Black, 82 S.W.3d at 53; Pedraza v. Tibbs, 826
S.W.2d 695, 698 (Tex. App.—Houston [1st Dist.] 1992, writ dism’d
w.o.j.).

Although the trial court did not
state its statutory basis for dismissing the Jacksons’ case, it expressly found
that the Jacksons were able to pay all costs. 
And, in its prior order sustaining the district clerk’s contest, which
the trial court effectively incorporated into its dismissal order, the trial
court stated that the Jacksons had not filed their affidavit in good
faith.  We consider the trial court’s
dismissal to be based upon section 13.001(a)(1), which
permits a court to dismiss a lawsuit upon a finding that the allegation of
poverty is false.  See In re Kastner,
2009 WL 3401867, at *1 (noting that courts, after sustaining contest to  affidavit of indigence, “typically” dismiss
cases under grounds articulated in section 13.001); see also In re Tilotta, No.
01–11–00570–CV, 2011 WL 3505502, at *1 
(Tex. App.—Houston [1 Dist.] 2011, orig. proceeding) (stating that trial
court’s order sustaining the contest to rule 145 affidavit of indigence was
“merged into the trial court’s final judgment” of dismissal for want of
prosecution).

In their affidavit, the Jacksons
stated that they were unable to pay the costs of the proceedings, they were not
employed, their last day of employment had been on July 15, 2008, they had no
other income from any other sources (including interest or dividends), and they
had less than $20.00 in their checking account. 
The Jacksons further stated that they owned a car “that is currently in
bankruptcy.”  They set forth their
monthly expenses, which included a sizeable “bankruptcy payment,” house and car
insurance costs, and other basic monthly obligations, such as food, utilities,
and telephone bills.   Finally, they averred that their current
expenses exceeded their combined income. 
By the plain terms of the figures set forth in their affidavit, the
Jacksons represented an approximate weekly income of $240 and a monthly
obligation of bills for approximately $1,870. The Jacksons affidavit complies
in all material respects with rule 145 and provided the information
specifically articulated in the rule.  We
conclude that, in considering the record as a whole, the preponderance of the
evidence demonstrates that the Jacksons are unable to pay the costs ordered by
the trial court. See In re C.H.C., 331 S.W.3d 426, 429 (Tex. 2011) (stating that
test “for determining indigence is straightforward: Does the record as a whole
show by a preponderance of the evidence that the applicant would be unable to
pay the costs, or a part thereof, or give security therefor, if he really
wanted to and made a good-faith effort to do so?”; further stating that
affidavit may provide sufficient information to demonstrate that party is
unable to pay costs (on appeal), even if affidavit does not discuss each of items
enumerated in rules) (citations omitted).

The district clerk contested the
Jacksons’ affidavit only with a general citation to rule 145 and the assertion
that the affidavit did not comply “with one or more of the statutory
requirements.”  It did not attack the
affidavit in any particular respect.  The
trial court ruled on the contest at a hearing, which was recorded, but the
record reflects that there was no substantive discussion regarding either the
contest or the affidavit.  The only matter
discussed at the hearing was that the Jacksons had notified the trial court
that they could not attend the hearing.  The
district clerk, who was represented by the Harris County Attorney, did not
identify any errors or omissions in the Jacksons’ affidavit, nor did it counter
the Jacksons’ assertions in their affidavit regarding their monthly income and
expenses.  In its order sustaining the
contest and in its subsequent dismissal order, the trial court set forth no
reasoning to support its finding that the Jacksons’ allegations of poverty were
false.  See Tex. R. Civ. P.
145 (“Reasons for such a finding must be contained in an order.”).  The record also reflects that the Jacksons
themselves did not attend the hearing. 
Although the affidavit could have been subject to critique because it
was prepared as a joint affidavit and did not make any distinction between the
Jacksons, the affidavit also indicates that the Jacksons were married and shared
a household, monetary resources, and monthly obligations.[14]  The district clerk did not complain about the
format of the joint application at the hearing or in its written contest.[15]  

Without any record as to why the
trial court found the Jacksons’ affidavit of indigency
to be false, and without the benefit of any reasoning set forth by the trial
court in its order sustaining the contest or in its subsequent dismissal order,
we conclude that the trial court, in dismissing the Jacksons’ lawsuit, acted
arbitrarily and without reference to guiding rules or principles.  See
Jones v. CGU Ins. Co., 78 S.W.3d 626, 628 (Tex. App.—Austin 2002, no pet.).  Accordingly,
we hold that the trial court abused its discretion in dismissing the Jacksons’
suit pursuant to section 13.001.

We sustain the Jacksons’ sole issue.[16]

 

 

 

 

 

Conclusion

          We
reverse the order of the trial court and remand the case for further
proceedings consistent with this opinion. 

 

 

                                                                    Terry Jennings

                                                                   Justice 

 

Panel
consists of Justices Jennings, Massengale, and Huddle.











[1]           North Forest ISD is the only defendant
who appeared in the lawsuit below. 

 





[2]           See
Tex. R. Civ. P. 145(d).

 





[3]
          The Jacksons alleged that this land is “legally described as LT. 253, BLK 16 PARKHURST ESTATES.”

 





[4]           The Jacksons specifically allege that
North Forest ISD had previously obtained a judgment for the non-payment of
taxes against “Mandola Jos. F.,” who the Jacksons
describe as “the property owner.”  The
Jacksons do not explain their relationship, if any, to Mandola
Jos. F.

   





[5]
          The Jacksons attached to this
application another affidavit in which they declare “under oath and penalty of
the laws of the State of Texas” that they acquired title to the disputed land
“through 27 years of adverse possession.” 
This affidavit is also notarized, and the notary confirmed that it was
signed under oath.  

 





[6]
          Although the Jacksons submitted
a joint application, they use the pronoun “I” throughout the application
without distinguishing whether certain statements pertained to one or both of
them.  We construe the application to
reflect joint declarations.





[7]
          Prior to the entry of this final
dismissal order, the trial court had not entered an appealable order.  A trial court’s order sustaining a district clerk’s contest to
an affidavit of indigence is generally an interlocutory order for which there
is no right of appeal.  See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)
(Vernon Supp. 2011); Jones v. Perez,
No. 01–11–00669–CV, 2011 WL 6147787, at *1 (Tex. App.—Houston [1st Dist.] Dec. 8, 2011, no pet. h.) (mem.
op.); see also Yarbrough v. Tex. Bd. of Pardons and Paroles, No. 01–10–00335–CV,
2011 WL 3839712, at *1 (Tex. App.—Houston [1st Dist.] Aug.
25, 2011, no pet.) (mem.
op.) (“We may review a challenge to an order sustaining a contest to an
affidavit of indigence only when it is made as part of a pending appeal from a
final judgment or other appealable order.”); Aguilar v. Texas La Fiesta Auto Sales LLC, No. 01–08–00653–CV, 2009
WL 1562838, at *1–2 (Tex. App.—Houston [1st Dist.] June 4,
2009, no pet.) (mem.
op.) (dismissing appeal of order sustaining contest to
affidavit of indigence for trial court costs). 
Although the Jacksons’ initial appeal of the trial court’s order
sustaining the contest was premature, the trial court has now entered a final,
appealable order, and we treat the Jacksons’ appeal as arising from the
dismissal order.  See Tex. R.
App. P. 27.1, 27.2, 27.3.

The Jacksons also did not
expressly seek mandamus relief. 
Recently, in dismissing the appeal of order sustaining a contest to an
affidavit of indigence prior to entry of final judgment, we “express[ed] no opinion about whether the
trial court’s order [was] reviewable by petition for a writ of mandamus.”  Aguilar,
2009 WL 1562838, at *1 n.1; see also Carter v. Dickson, 514 S.W.2d 349,
350–51 (Tex. Civ. App. 1974, orig. proceeding [mand.
denied]) (denying mandamus relief from order sustaining contest to affidavit of
indigence filed under rule 145). 





[8]
          In November 2011, this Court entered an order, concluding that the Jacksons are considered
indigent for purposes of appeal. 
This conclusion does not resolve the Jacksons’ appeal of the trial
court’s dismissal order.  See Tex.
R. Civ. P. 145; see also Tex. R. App. P. 20.1(c)(1)
(“An appellant must file the affidavit of indigence in the trial court with or
before the notice of appeal. The prior filing of an affidavit of indigence in
the trial court pursuant to Texas Rule of Civil Procedure 145 does not meet the
requirements of [Rule 20.1], which requires a separate affidavit and proof of
current indigence. . . .”). 





[9]           See
Tex. Civ. Prac.
& Rem. Code Ann. § 13.001 (Vernon 2002).





[10]
        The Texas Supreme Court has held
that appeal, not mandamus, is the sole way to review a denial of a free
appellate record.  In re Arroyo, 988 S.W.2d 737, 739 (Tex.
1998).

 





[11]
        There is little authority regarding the
proper standard of review of a trial court’s dismissal of a lawsuit made on the
ground that the allegation of poverty in an affidavit of indigency
is false.  See Tex. Civ. Prac. & Rem. Code Ann. §13.001(a)(1).  Courts have reviewed dismissals of frivolous or
malicious actions for an abuse of discretion. 
See id. § 13.001(a)(2); Jones v. CGU
Ins. Co., 78 S.W.3d 626, 628 (Tex. App.—Austin 2002, no pet.).  Courts have also reviewed appeals from trial
courts’ orders sustaining contests to affidavits filed in an attempt to proceed as indigent on appeal for an abuse of
discretion.  Douglas
v. Ingersoll, No.
14–09–00930–CV, 2010 WL 1077420, at *1 (Tex. App.—Houston [14th Dist.] Mar. 25, 2010, no pet.).  Accordingly, we conclude that the
proper standard of review to apply here is the abuse-of-discretion
standard.  





[12]
        A party’s affidavit of inability that attests
to receipt of government entitlement based on indigency
may be contested only with respect to the veracity of the attestation.  Tex. R. Civ. P. 145(d).

 





[13]
        A court in which an affidavit of inability to pay under rule 145 has
been filed may also dismiss the action on a finding that “the action is
frivolous or malicious.”  Tex. Civ. Prac. & Rem. Code Ann. § 13.001(a)(2).  Here, the trial court made no findings that
the Jacksons’ suit was frivolous or malicious.





[14]
        We acknowledge that the affidavit
inconsistently states that the affiants were “currently unemployed” but also
states that they are “currently employed and receives [sic] $12 dollars an hour
20 hours per week.”  Part of this
inconsistency may be attributable to the fact that the application is presented
as a joint application and is signed by both Jacksons, yet it also contains
singular references.  However, the
district clerk did not raise this matter, and the trial court did not set forth
its reasoning in its order.  

 

Our supreme
court has recently emphasized that “[c]ourts should
be open to all, including those who cannot afford the costs of admission” and
we should construe the rules to effectuate this purpose.  In re
C.H.C., 331 S.W.3d 426, 429 (Tex. 2011); see also Higgins v. Randall County Sheriff’s Office, 257 S.W.3d
684, 686 (Tex. 2008) (“The concept that courts should be open to all, including
those who cannot afford the costs of admission, is firmly embedded in Texas
jurisprudence.”).  

 

Accordingly,
when considering the matter of indigency, our supreme
court has “decline[d] to elevate form over substance” and has “refus[ed] to require strict
conformance with other formal aspects” of the rules governing affidavits of indigency.  See Higgins,
257 S.W.3d at 688 (addressing adequacy of affidavit of indigency
filed for purposes of appeal, but acknowledging rules at both appellate and
trial levels that require liberal construction in order to preserve litigants’
rights).  Thus, we will not affirm the
trial court’s ruling based upon the potential inconsistencies and formal
defects that arise from the fact that the Jacksons jointly filed their
affidavit.   

 





[15]
        We further acknowledge that the
affidavit might also be subject to critique because (1) it was styled an
Application to Proceed without Payment of Fees rather than an “Affidavit on Indigency,” as is referred to in the rules; (2) although
the Jacksons “declar[ed]”
in their affidavit that there were
seeking to proceed without payment of fees and that they were “unable to pay
the costs” of the proceedings,” they did not use all of the quoted language in
rule 145 that they “verif[ied] that the statements made in this affidavit [were] true
and correct”; (3) although the affidavit was notarized, the Jacksons did not
state that the affidavit was sworn; and (4) only the second affidavit, which
was attached to the application and which related to the issue of adverse
possession, contained language that they made their statements under
“oath.”  As with the possible critique
arising from the Jacksons’ filing of a joint affidavit, it bears repeating that
the district clerk, both at the trial court and on appeal, has not attacked the
sufficiency of the affidavit for any of these possible errors or defects.  Precedent from our supreme court indicates
that, had such matters been raised, the Jacksons should have been given an
opportunity to amend their affidavit before their case was dismissed on any
such grounds.  See id. (noting “policy embodied in our appellate rules that
disfavors disposing of appeals based upon harmless procedural defects”); Higgins v. Randall County Sherriff’s Office,
193 S.W.3d 898, 899–900 (Tex. 2006) (holding that appeal may not be dismissed
for formal procedural defect in affidavit of indigency
unless party is provided reasonable opportunity to correct defect); see also In re B.N., 303 S.W.3d 16, 18 (Tex. App.—Waco 2009, no pet.) (stating that “unsworn” affidavit of indigency
did not satisfy requirements for filing affidavit of indigency
in parental termination case, but holding that trial court should have given
appellant reasonable opportunity to amend). 
Moreover, the trial court actually stated in its order, which was
effectively incorporated into its dismissal order, that the Jacksons’ affidavit
was not filed in good faith.  It did not
sustain the contest and ultimately dismiss the case on the ground that the
affidavit failed to comply with the rules in the above-specified procedural
manners.  Finally, we note that, after
sustaining the contest, the Jacksons filed revised affidavits of indigence with
additional information, and there is no indication that the trial court
considered those affidavits.  Rather, in
its dismissal order, the trial court incorporated its December 7, 2009 ruling.  

         





[16]
        In light of our holding, we need
not directly address the issue of notice raised by the Jacksons.  However, we note that generally a party is entitled to three
days’ notice of a hearing if served in person, by agent, or by courier, or six
days’ notice if served by certified mail or telephonic document transfer.  See
Tex. R. Civ. P. 21, 21a.  In their briefing, the Jacksons contend that
they received no notice, or at least insufficient notice, of the hearing on the
contest.  The record does not contain any
documents indicating that the Jacksons were provided any advanced notice of the
hearing date on the district clerk’s contest, and the district clerk has not
filed a brief on appeal responding to the Jacksons’ contention that they did
not receive notice.  At the hearing,
although the record reflects that the Jacksons called the trial court to inform
it that they could not attend, there was no discussion
of whether the Jacksons received the requisite notice.  See
Prince v. Am. Bank of Tex., No. 05–10–01540–CV, 2011 WL 5345251, at *1
(Tex. App.—Dallas Nov. 8, 2011, no pet.) (mem.
op.) (holding that trial court abused its discretion in sustaining contest to
affidavit of indigence because party asserting indigency
received inadequate notice of hearing); Ward
v. City of Dallas, No. 05–10–00941–CV, 2011 WL 2119552, at *1 (Tex.
App.—Dallas May 27, 2011, no pet.) (mem.
op.) (same); see also Aguilar v. Stone, 68 S.W.3d 1, 2 (Tex.
App.—Houston [1st Dist.] 1997, orig. proceeding) (holding that petitioner
inmate was entitled to notice on hearing of contest to his affidavit of
inability to pay costs, and reversing trial court order that sustained contest
for inmate’s failure to appear at contest hearing).